**IN THE COURT OF APPEALS OF IOWA**
No. 16-0392
Filed May 11, 2016

**IN THE INTEREST OF K.W., D.W., B.W., and B.W.,**
**Minor Children,**

**P.T., Mother,**
        Appellant.

**B.W., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Deborah Farmer

Minot, District Associate Judge.


        A mother and a father separately appeal from the order terminating their

parental rights to four children. **AFFIRMED ON BOTH APPEALS.**


        Robin L. Miller, Marion, for appellant mother.

        Noelle R. Murray of Murray Law Office, P.L.C., Cedar Rapids, for

appellant father.

        Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

        Anthony A. Haughton of Linn County Advocate, Cedar Rapids, for minor

children.


        Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

A mother and a father separately appeal from the order terminating their parental rights to four children: B.W., born December 2003; K.W., born December 2004; D.W., born January 2006; and Br.W., born March 2008. The juvenile court terminated both parents' parental rights pursuant to Iowa Code section 232.116(1)(f) (2015).[1] The children are all over four years of age and have been out of their parents' custody for more than eighteen consecutive months. The father appeals, claiming the court should have allowed him time upon his release from prison to work toward reunification. The mother's contentions on appeal are that there is not clear and convincing evidence the children could not be returned to her care once she moves back to Iowa and establishes a home, and that termination is not in the children's best interests.

We review termination decisions de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

Previously, the children were removed from the parents' custody in August 2008, as a result of the parents' domestic violence and inappropriate supervision. The family received services, and the children were returned to their mother in June 2009. Juvenile court involvement was closed in September 2009.

The children were again removed from parental custody by ex parte order on July 29, 2014, when two of the children were physically injured by a cousin while staying with a great aunt and uncle. During the investigation into the

---

[1] Section 232.116(1)(f) allows the court to terminate parental rights if a child who is four years old or older has been adjudicated a child in need of assistance, has been out of the parent's custody for at least the last twelve consecutive months, and cannot be returned to the parent's care at present.

physical abuse, it was learned that the four children had been left with the great aunt and uncle for a lengthy period of time (perhaps since August 2013).

A removal hearing was held on August 6, 2014. Neither parent appeared at the removal hearing. An order was entered continuing the removal and placing limited guardianship with the great aunt and uncle. The parents were reportedly both in the Chicago area: the mother was homeless and the father was residing with others. The mother had purportedly threatened the aunt and uncle with harm if they contacted the department of human services (DHS). The father had an outstanding warrant for sexual abuse in the third degree.

The children were adjudicated children in need of assistance (CINA) on October 23, 2014.[2] The mother stipulated the children were in need of assistance. At that time, the mother reported she was working in Illinois and was attempting to obtain housing for her children. A home study was to be conducted.

On June 11, 2015, the juvenile court issued a permanency order and the mother was granted a six-month extension to seek reunification. The court wrote:

> The Court finds that reasonable efforts have been made to accomplish the goal of family reunification, as fully documented by the file and current reports. The Court will continue the children's current placement for an additional six months to allow the mother time to achieve the goal of family reunification. The Court bases this determination upon the following: the mother has made progress toward the goal of reunification by having regular contact with the children, cooperating with services in Iowa (to the extent possible) and Illinois, and actively seeking appropriate housing. The major barriers to reunification are: the mother's decision to live

---

[2] The CINA adjudication date with respect to the father is December 15, 2014.

in Illinois; lack of appropriate housing; and incomplete Interstate Compact home study. Accordingly,

IT IS THE ORDER OF THE COURT that . . . . The permanency goal of this case shall remain family reunification for an additional six months, as the parties agree that it is reasonably likely that the children will be returned to parental custody within that time. The Court finds that the Department has made reasonable efforts to accomplish the goal of family reunification. The Court further finds that, at this time, it is contrary to the welfare of the children to return them to parental care because the mother has not yet achieved the goals of the Case Permanency Plan.

FURTHER, the mother shall comply with the following expectations: (1) obtain and maintain suitable housing; (2) obtain and maintain regular employment or another source of regular income sufficient to support herself and meet the needs of the child;[3] (3) maintain consistent contact with the children and visit as frequently as possible; (4) cooperate with the Interstate Compact home study; and (5) cooperate with all expectations of the Case Permanency Plan.

Review hearings were scheduled for September 2015 and January 2016.

In an October 1, 2015 order, the court noted the mother was requesting that the court order DHS to "reinitiate" an interstate compact home study. The court wrote:

The Court notes that an order authorizing a home study was entered at the mother's request on March 9, 2015. Long before that, the mother chose to leave her children in Iowa and move to Illinois. She has been advised directly by the Court that the children cannot and will not be returned to her without an approved interstate compact home study. The Court is at a loss as to why the mother would wait over six months to report a problem with the home study, and not until after DHS filed its report stating the mother failed to respond. The Court notes the mother's request and directs her and/or her attorney to contact DHS directly.

The State filed petitions to terminate the parents' rights on November 2, 2015.

---

[3] While in Chicago, the mother had another child.

On January 15, 2016, a DHS report was filed with the court in which it was reported that the father remained in prison, with the "earliest" release date being March 1, 2017. The mother was employed in Chicago but did not have a home of her own. The children were going to counseling to "deal with their own issues of abandonment and the confusion they feel about what role the adults in their lives are playing," but were doing well in school and were participating in extracurricular activities. A pretrial hearing was held that same date. The mother did not appear. The court entered an order observing the mother's attorney "could provide no information regarding the mother's failure to appear. It appears the mother has not been in regular contact with her attorney. The Court notes the mother was directly ordered to appear."

A permanency review and termination hearing was held on January 26, 2016. The mother did not appear. The father testified by telephone that he wished the court would allow him additional time to get out of prison and seek reunification. The court left the record open for ten days to allow the mother to submit a written statement, should she wish to. The GAL recommended termination of both parents' rights because the great aunt and uncle had and would continue to provide a home for the children, who "deserve and need long-term stability." The great aunt stated she loved the mother, having raised her as her own child: "We would love to have her involved with her kids, but the instability back and forth with the parents is just unacceptable to me. My main concern is to keep the kids healthy and happy and safe." On February 5, 2016, the court filed the mother's letter, in which she stated she had made mistakes but loved her children and asked for help to keep them.

There is clear and convincing evidence to support termination of both parents' parental rights pursuant to section 232.116(1)(f). The children cannot be returned to either parent at this time. The mother is without a home, and the father is in prison.

The mother has already been granted an additional six months. Additional time for either parent will leave these children in a limbo that they have already experienced for more than the one-year statutory period. *See* Iowa Code § 232.116(1)(f). We will not grant additional time.

> Once the [statutory] limitation period lapses, termination proceedings must be viewed with a sense of urgency. Insight for the determination of the child's long-range best interests can be gleaned from "evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing."

*In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (citation omitted). Termination of parental rights will allow the children the permanency they need and deserve. We therefore affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**